UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE JAMES MADISON PROJECT, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 18-cv-03112 (KBJ) |
| CENTRAL INTELLIGENCE AGENCY, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The James Madison Project and Jefferson Morley ("Plaintiffs") have filed a complaint against the Central Intelligence Agency ("CIA") under the Freedom of Information Act ("FOIA") seeking records regarding "any association or contractual agreements with (a) President Bush, (b) Zapata Petroleum Corporation or (c) Zapata Offshore Corporation . . . from 1953 to March 1, 1971." (1st Am. Compl., ECF No. 9, ¶¶ 3–5, 11.)  Before this Court at present is the CIA's motion for summary judgment (*see* Def.'s Mot. for Summ. J., ECF No. 18), which maintains that the CIA "conducted a reasonable search of agency records" and "disclosed all non-exempt responsive records" consistent with its obligations under the FOIA (Def.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 18-1, at 7).[1]  The CIA additionally argues that it properly withheld responsive records or portions thereof under FOIA Exemptions 1, 3, 6, and 7(C), and that it appropriately invoked the *Glomar* response to "refuse[] to confirm or deny maintaining records that would show a classified association[.]"  (*Id.* at 14, 17.)

---

[1] Page number citations to the documents that the parties have filed refer to the numbers automatically assigned by the Court's electronic case filing system.

Plaintiffs concede that the CIA adequately searched its records and properly invoked Exemption 3 and the *Glomar* response. (*See* Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Opp'n"), ECF No. 19, at 5.) Plaintiffs insist, however, that the CIA has improperly withheld information under Exemptions 1, 6, and 7(C), and that it has failed to establish its compliance with the FOIA's segregability requirements. (*See id.* at 8–15.) Upon considering the parties' submissions, this Court is satisfied that Exemption 1 has been properly invoked. However, due to the conclusory statements in the CIA's declarations, the Court is not in a position to evaluate whether the agency has properly invoked Exemptions 6 and 7(C), or whether the agency has disclosed all reasonably segregable materials. Accordingly, the CIA's motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.

I.

FOIA Exemption 1 permits the withholding of records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In the instant case, the CIA relies on Executive Order 13526, which includes among its list of classifiable materials government records that "pertain[] to . . . intelligence activities (including covert action), [or] intelligence sources or methods[.]" Exec. Order No. 13526, § 1.4(c), 75 Fed. Reg. 707 (Dec. 29, 2009); *see also id.* § 1.1(a)(2). Executive Order 13526 allows such information to be classified by a government official with "original classification authority" if the official "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," and "is able

to identify or describe the damage." *Id.* § 1.1(a)(1), (4).  Moreover, when classified documents reach a certain age, Executive Order 13526 provides for automatic declassification, except in certain circumstances.  For example, if a record is twenty-five years old, it may remain classified if its release would "reveal the identity" of sources or "impair the effectiveness of an intelligence method currently in use[.]" *Id.* § 3.3(b)(1).  Likewise, Executive Order 13526 exempts fifty-year-old records from automatic declassification if they disclose a source's identity or contain "additional specific information" that the Director of the CIA has identified, subject to the approval of the Interagency Security Classification Appeals Panel.  *See id.* § 3.3(h), (j).

To withhold information under FOIA Exemption 1, an agency must establish that the requirements of the relevant Executive Order have been met, *see ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619, 624 (D.C. Cir. 2011), and it may satisfy this burden by submitting detailed affidavits or declarations that "set forth reasons for invoking Exemption 1 that are both plausible and logical," *see Unrow Human Rights Impact Litig. Clinic v. United States*, 134 F. Supp. 3d 263, 275 (D.D.C. 2015).  Such affidavits and declarations are entitled to substantial deference given the "uniquely executive" nature of the national security determinations at stake.  *See id.* at 272 (internal quotation marks and citation omitted).

Applying these principles to the case at hand, the Court is persuaded that the CIA has properly invoked Exemption 1.  To establish the applicability of this exemption, the CIA has submitted the declaration of Antoinette B. Shiner, the Information Review Officer at the CIA's Litigation Information Review Office.  (*See* Decl. of Antoinette B. Shiner ("Shiner Decl."), ECF No. 18-3, ¶ 1.)  In her declaration, Shiner asserts that

"[a]s an original classification authority" within the meaning of Executive Order 13526, she determined that some of the responsive records uncovered in the agency's search contained the "names of covert personnel, locations of covert facilitates, subjects of intelligence interest, and information that would tend to reveal specific intelligence sources, methods and or activities." (*Id*. ¶ 15.) The declaration also describes the importance of protecting such information in order to "prevent foreign adversaries, terrorist organizations, and others from learning about the ways in which the CIA operates, that would allow them to use countermeasures to undermine U.S. intelligence capabilities and render collection efforts ineffective." (*See id.*) Shiner additionally explains that "disclosing the identity of a covert employee could jeopardize the safety of the employee, his or her family, his or her sources, and other persons with whom he or she has had contact." (*See id.* ¶ 16). In the Court's view, these statements—which have been provided under oath—satisfy Executive Order 13526's basic requirements, insofar as Shiner plausibly and logically avers that: (1) the withheld records are government documents concerning "intelligence activities (including covert action)" or "intelligence sources or methods"; and (2) the declarant is an original classification authority who is (3) "able to identify or describe the damage" to national security that would result from the information's disclosure. *See* Exec. Order No. 13526 § 1.1(a).

Plaintiffs nevertheless contend that the CIA has failed to carry its burden because the agency did not justify the continued classification of documents that are more than twenty-five or fifty years old. (*See* Pls.' Opp'n at 9–11.) However, in the supplemental declaration that the CIA submitted in response to Plaintiffs' opposition, Shiner clarifies that Executive Order 13526's automatic declassification requirements

4

do not apply to the records at issue.  (*See* Suppl. Decl. of Antoinette B. Shiner ("Shiner Suppl. Decl."), ECF No. 20-1, ¶ 3.)  Specifically, because the twenty-five-year-old records discuss sources and methods that are "still in active use," they are exempt from automatic declassification under section 3.3(b) of the Executive Order.  (*See id.*)  And with respect to the records that are over fifty years old, which also discuss methods still in use, the supplemental declaration notes that the Director of the CIA has exempted "sensitive information that could reveal an intelligence method in active use[,]" and that the Interagency Security Classification Appeals Panel has approved this exemption, consistent with sections 3.3(h) and (j) of the Executive Order.  (*See id*.)

Therefore, based on Shiner's statements and "the substantial deference owed to government [declarations] in [the national security] context," the Court concludes that the CIA has sufficiently justified its withholding of records under Exemption 1.  *See Unrow*, 134 F. Supp. 3d at 273; *see also Lynn v. Nat'l Archives & Records Admin*., No. 18-cv-587, 2019 WL 481290, at *3–5 (D.D.C. Feb. 7, 2019) (finding under similar circumstances that the CIA properly withheld documents under Exemption 1, including records that were over fifty years old).

## II.

The Court cannot make any determination with respect to the CIA's motion for summary judgment concerning its invocation of FOIA Exemptions 6 and 7(C).  Under the FOIA, an agency may invoke Exemption 6 to withhold "personnel and medical files and similar files" if their disclosure "would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  Similarly, Exemption 7(C) permits agencies to withhold "records or information compiled for law enforcement purposes, but only to

the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" *Id.* § 552(b)(7)(C).  To properly invoke either exemption, the agency must demonstrate that "there is a privacy interest at stake," and that "the public's interest in the information" does not "outweigh[] this privacy interest."  *See Gosen v. U.S. Citizen & Immigr. Servs.*, 75 F. Supp. 3d 279, 289 (D.D.C. 2014).  In making this showing, an agency must do more than assert that the disclosure of personal information would subject affected individuals to "undue invasions of privacy, harassment and humiliation."  *See Neuman v. United States*, 70 F. Supp. 3d 416, 423 (D.D.C. 2014) (internal quotation marks omitted).  Instead, the agency must present facts that support its assertions and explain "*who* would engage in such harassment and *why* th[at] outcome is likely."  *See Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 142 (D.D.C. 2014).

  The CIA's submissions in this case do not come close to meeting that standard.  To start, the declarations on which the CIA relies contain wholly conclusory and speculative assertions.  (*See* Shiner Decl. ¶ 23 (asserting that "the individuals named in the records . . . maintain a strong privacy interest in this information because its release could subject them to harassment, embarrassment or unwanted contact"); Decl. of David M. Hardy, ECF No. 18-5, ¶ 10 (stating that the disclosure of "third parties' names and identifying information could reasonably be expected to draw negative and unwanted attention to these individuals and could subject these individuals to possible harassment").)  What is more, the declarations also acknowledge that the CIA cannot determine whether the individuals mentioned in the records are alive or deceased, and

6

that "the records do not provide sufficient additional identifying information such that the Agency c[an] ascertain with any degree of certainty an individual's status." (Shiner Suppl. Decl. ¶ 6.)  Yet, notwithstanding the records' manifest dearth of detailed identifying information, the CIA maintains that "the release of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy" because "knowledgeable people" could determine the individuals' identity based on "information that is not publicly accessible or available to the Agency." (*Id.* ¶ 7; *see also* 2d Decl. of David M. Hardy, ECF No. 20-2, ¶ 6.)  These allegations are the exact type of speculative assertions that this Court has repeatedly rejected. *See, e.g.*, *Neuman*, 70 F. Supp. 3d at 423; *Judicial Watch*, 25 F. Supp. 3d at 143.

Due to this deficiency, the Court is unable to determine whether disclosure of the requested records would constitute an "unwarranted invasion of personal privacy[,]" *see* 5 U.S.C. § 552(b)(6), (7)(C), and therefore the CIA has not yet carried its burden of establishing that Exemptions 6 and 7(C) apply.

### III.

Finally, based on the current record, the Court also cannot determine whether the CIA has released all reasonably segregable materials to Plaintiffs.  For one thing, it is not at all clear that the CIA has properly withheld records under Exemptions 6 and 7(C) for the reasons just discussed.  But perhaps even more importantly, the agency has not provided the Court with any means to assess the extent of its disclosures and redactions.  The CIA's brief in support of its motion for summary judgment refers to a *Vaughn* Index that was allegedly compiled for this case in passing (*see* Def.'s Mem. at 7, 14), but the agency has not attached any such index to its motion or memoranda.  And

7

without additional details about the content of each record and the degree to which Exemptions 1, 6, and 7(C) purportedly apply to the information contained therein, *see Neuman*, 70 F. Supp. 3d at 424, this Court cannot meaningfully evaluate the CIA's assertion that it has conducted a "line-by-line" review of the records and has disclosed all segregable non-exempt information (*see* Def.'s Reply, ECF No. 20, at 9), *see, e.g., Leopold v. CIA*, 106 F. Supp. 3d 51, 64 (D.D.C. 2015).

IV.

For the reasons outlined above, the Court finds that the CIA has properly applied Exemption 1 to the responsive records at issue. The CIA has not, however, provided enough information for the Court to determine whether the agency has properly invoked Exemptions 6 and 7(C), or whether it has released all reasonably segregable materials.

Accordingly, it is hereby

**ORDERED** that the CIA's Motion for Summary Judgment, ECF No. 18, is **GRANTED IN PART and DENIED IN PART**, as follows. In light of Plaintiffs' concessions (*see* Pls.' Opp'n at 5), the motion is granted with respect to the adequacy of the CIA's search, its use of the *Glomar* response, and its application of Exemption 3, and it is further granted with respect to Exemption 1 for the reasons explained herein. The CIA's motion is otherwise denied without prejudice. It is

**FURTHER ORDERED** that, on or before October 7, 2020, the parties shall file a joint proposed schedule that proposes due dates for the following filings: (1) a supplemental declaration by the CIA that details the privacy interests that the relevant records implicate and explains why disclosure would compromise such interests; (2) a *Vaughn* Index that specifies the responsive records uncovered in the CIA's search and

identifies which FOIA exemptions apply to which redactions; and (3) the CIA's revised motion for summary judgment, if the agency wishes to refile one.

DATE:  September 23, 2020                    *Ketanji Brown Jackson*
                                             KETANJI BROWN JACKSON
                                             United States District Judge